**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANLEY BARTON, | No. 23-15902 |
| *Plaintiff-Appellant*, | D.C. No. 3:22-cv-08022-SPL |
| v. | |
| OFFICE OF NAVAJO AND HOPI INDIAN RELOCATION, an administrative agency of the United States, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted May 14, 2024
Phoenix, Arizona

Filed January 8, 2025

Before: Roopali H. Desai and Ana de Alba, Circuit Judges,
and Edward M. Chen,* District Judge.

Opinion by Judge Desai

---

* The Honorable Edward M. Chen, United States District Judge for the Northern District of California, sitting by designation.

# SUMMARY[**]

## Tribal Relocation Benefits

The panel reversed the district court's summary judgment in favor of the Office of Navajo and Hopi Indian Relocation, which affirmed a decision of the Independent Hearing Officer ("IHO") denying Manley Barton's application for relocation benefits under the Navajo-Hopi Settlement Act.

Manley applied for relocation benefits based on his residence at his grandparents' Hopi Partitioned Lands ("HPL") homesite. To be eligible for benefits, an applicant must show that he (1) was a resident of the land partitioned to the tribe of which he was not a member on December 22, 1974; and (2) was head of household as of the date he moved away from the land partitioned to the tribe of which he was not a member.

The panel held that because Manley was away from the HPL homesite after 1984 for his education and then his employment, he qualified for the "temporarily away" exception. Therefore, to determine Manley's legal residence, the IHO needed to examine Manley's intent to reside on the HPL homesite and manifestations of his intent in accordance with the proper standard. But instead, the IHO found one fact dispositive of Manley's residence: his grandparents' relocation from the HPL homesite. This reasoning failed to comport with the residency standard. The panel concluded that the IHO's decision was

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

arbitrary and capricious, and reversed and remanded for further proceedings.

## COUNSEL

Lee Phillips (argued), Law Office of Lee Phillips PC, Flagstaff, Arizona, for Plaintiff-Appellant.

Ezekiel Peterson (argued), John E. Arbab, and William B. Lazarus, Attorneys; Todd Kim, Assistant Attorney General; United States Department of Justice Environment & Natural Resources Division, Appellate Section, Washington, D.C.; Katherine R. Branch and William C. Staes, Assistant United States Attorneys; United States Department of Justice, Office of the United States Attorney, Phoenix, Arizona; Larry Ruzow, Attorney, Office of Navajo and Hopi Indian Relocation, Flagstaff, Arizona; for Defendant-Appellee.

**OPINION**

DESAI, Circuit Judge:

Manley Barton, a registered member of the Navajo tribe, applied for benefits from the Office of Navajo and Hopi Indian Relocation ("ONHIR"). His application was based on his relocation within the Joint Use Area ("JUA"), a portion of reservation land in northeastern Arizona, following its partition between the Navajo and Hopi tribes. ONHIR denied Manley's initial application, and on appeal, the Independent Hearing Officer ("IHO") concluded that Manley was ineligible for benefits. On appeal, Manley argues that (1) substantial evidence does not support the IHO's findings, (2) the IHO's decision is arbitrary and capricious because it misapplied two ONHIR policies, and (3) the IHO's denial violated its federal trust responsibility. We reverse and remand because the IHO improperly applied the OHNIR policy regarding the "temporarily away" exception and thus the IHO's decision is arbitrary and capricious.

## BACKGROUND

### I.   The Settlement Act

After years of conflict between the Navajo and Hopi tribes about ownership of the JUA, Congress enacted the Navajo-Hopi Settlement Act ("Settlement Act") to partition the land between the two tribes. *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). The JUA was split into the Hopi Partitioned Lands ("HPL") and Navajo Partitioned Lands ("NPL"), and we approved the partition in *Sekaquaptewa v. MacDonald*, 626 F.2d 113 (9th Cir. 1980).

Pursuant to the Settlement Act, individuals residing on land partitioned to the tribe of which they were not a member were required to relocate from their homes. *See* 25 U.S.C. § 640d-13(a). Congress also created ONHIR, a federal agency, to administer the Act, and funds were allocated to provide eligible tribe members with relocation benefits. *See* 25 C.F.R. § 700.1 (1988). To be eligible for benefits, an applicant had to show that he (1) was a resident of the land partitioned to the tribe of which he was not a member on December 22, 1974, and (2) was head of household as of the date he moved away from the land partitioned to the tribe of which he was not a member. 25 C.F.R. §§ 700.147(a)–(b), 700.69(c).

## II.  Manley's Residential History

In 1966, Manley was born on his grandparents' homesite in Beshbito and lived there with his family. When his parents found jobs in Holbrook, Arizona, Manley moved with them. He attended school in Holbrook from elementary school to the time of his high school graduation in 1985.

When the JUA was partitioned in 1974, Manley's grandparents' homesite in Beshbito became part of the HPL. They also had a second homesite that became part of the NPL. Even though he lived in Holbrook, Manley returned to the HPL homesite during summers, weekends, and holidays with his mother and sister throughout the early 1980s. In 1984, his grandparents were certified for relocation benefits, and they relocated from the HPL homesite to their NPL homesite. After Manley's grandparents moved, several of Manley's family members testified that they used the HPL homesite for religious ceremonies a couple times a year. They also testified that the family's livestock remained at the HPL homesite for several years. Manley's aunt, Ruth Begay,

testified that she did not "recall anyone living [at the HPL homesite] like 24/7." Manley testified that he was at the HPL homesite "all the time" and spent his time doing various household chores. He further testified that he lived at the HPL homesite until 1986. Around 1984, Manley's father became sick with cancer and received medical treatment in Albuquerque, Shiprock, and Flagstaff. Manley visited his father at the hospital while he was receiving treatment, and his father passed away in 1986.

After graduating high school, Manley worked as a construction worker and gas station attendant. Most of his construction work was throughout northern Arizona, and the gas station was in Holbrook. He earned $4,105 from the two jobs in 1985. Manley's mother, Marie Barton, was certified for relocation benefits based on her residence at the HPL homesite and moved to the NPL in 1986. There is unrebutted testimony that Manley's aunts Ruth Ann Begay and Mildred Begay and possibly other members of the family were also similarly certified for benefits.

## III.  Manley's Application for Benefits and Subsequent Appeals

Manley applied for relocation benefits based on his residence at his grandparents' HPL homesite. ONHIR denied his application for failure to satisfy the head of household requirement, and he appealed the decision. In support of his appeal, Manley testified and also presented his uncle Richard Begay, aunt Mildred Begay, aunt Ruth Ann Begay, and sister Marcella Barton as witnesses. And following his hearing before the IHO, Manley submitted a memorandum arguing that his continued contacts with the HPL homesite through 1986 established that he was the head of household at the time he moved away from the HPL. The

IHO denied Manley's appeal. He found that all the witnesses were credible but noted that Ruth's credibility was limited due to her inability to recall certain dates. The IHO concluded that Manley was a legal resident of the HPL on December 22, 1974, but his residence at the HPL homesite ended in 1984. The IHO explained that Manley's "claim to legal residence" at the HPL homesite "ended in 1984 when [his] grandparents relocated to the NPL . . ." Regardless of the family's use of the structures at their former HPL homesite after relocation, the HPL homesite was no longer any family members' homesite or legal residence for relocation purposes." Without considering any other evidence, the IHO relied on this finding to conclude that Manley could not be considered "temporarily away" from the HPL homesite. And because Manley was a dependent minor in 1984, the IHO ultimately found that he could not satisfy the head of household requirement.

Manley filed an appeal in the district court, and each party moved for summary judgment. The district court granted summary judgment in favor of ONHIR, finding that the IHO's conclusion that Manley's legal residence on the HPL ended in 1984 was supported by substantial evidence and was not arbitrary or capricious. It also rejected Manley's claim that ONHIR violated its federal trust responsibility by denying his application for benefits. Manley timely appealed. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017). When summary judgment involves review of an administrative proceeding, we need only

"determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Under the Administrative Procedure Act ("APA"), we review ONHIR's decision to determine whether it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122.

Under the arbitrary and capricious standard, we "simply ensure[] that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained [its] decision." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). For instance, a decision is arbitrary and capricious when it "relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1983).

## ANALYSIS

To satisfy the head of household requirement under the Settlement Act, an applicant must show that he was head of household *as of the time he moved from the land partitioned to the other tribe*. 25 C.F.R. §§ 700.147(a)–(b), 700.69(c). This element requires establishing when an applicant's residence at a homesite ended. Generally, determining an applicant's residence "requires an examination of the person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,277–78 (May 29, 1984)

(eliminating "substantial and recurring contacts" standard and adopting "intent and manifestations of intent" standard for assessing residency). According to the regulations, several factors can be considered, including:

> Ownership of livestock, Ownership of improvements, Grazing Permits, Livestock sales receipts, Homesite leases, Public health records, Medical and Hospital records, including those of Medicinemen, Trading Post records, School records, Military records, Employment records, Mailing Address records, Banking records, Drivers license records, Voting records—tribal and county, Home ownership or rental off the disputed area, BIA Census Data, Information obtained by Certification Field Investigation, Social Security Administration records, Marital records, Court records, Records of Birth, Joint Use Area Roster, any other relevant data.

*Id.*

Furthermore, an applicant can establish eligibility for benefits under the "temporarily away" exception. Under this exception, an applicant who is physically away from their homesite for education or employment can still establish residency for relocation benefits eligibility. Initially, the regulations required an applicant who was "temporarily away" from their homesite to show "substantial recurring contacts" with their homesite to establish residency. *See Bedoni*, 878 F.3d at 1122 (applying the version of 25 C.F.R. § 700.97 in effect in 1977). But since then, the regulations

have been updated to adopt a general "intent and manifestations of intent" standard instead. *See* 49 Fed. Reg. 22,277–78 (May 29, 1984). It follows that, consistent with the current regulation, this new standard should also be used to assess the residency of applicants who are "temporarily away" from their homesite. And at oral argument, both parties conceded that the "intent and manifestations of intent" standard applies to the "temporarily away" exception. Therefore, an applicant who is away from his homesite for education or employment purposes can nevertheless establish residency through evidence of his intent to reside at the homesite or manifestations of that intent.

Here, Manley was away from the HPL homesite until he graduated from high school in 1985. Following his graduation, he was away from the HPL homesite for employment purposes. And before the IHO, Manley and his family members provided credible testimony demonstrating his intent to reside at the HPL homesite post-1984. Manley testified that he used the HPL homesite until 1986, when he moved to his mother's relocation house on the NPL. He testified that he was at the HPL homesite "all the time," lived in the hogans, used the hogans for ceremonies, and kept clothes and belongings there. Manley also testified that he did chores, hauled wood, and fed the animals at the HPL homesite. Similarly, Manley's family members testified that they held religious ceremonies at the HPL homesite "several times a year" until 1987. They also testified that the family kept livestock, maintained the structures, stored firewood, and kept furnishings and dishes at the HPL after 1984.

However, the IHO found that "[b]y operation of law," the HPL homesite could not be Manley's legal residence after his grandparents' 1984 relocation from the HPL

homesite, and concluded that "[r]egardless of the family's use" of the HPL homesite, it was "no longer any family member['s] homesite or legal residence." Manley argues that the IHO's failure to properly apply the "temporarily away" exception to determine his residence after 1984 renders the IHO's decision arbitrary and capricious.

Because Manley was away from the HPL homesite after 1984 for his education and then his employment, he qualifies for the "temporarily away" exception. Therefore, to determine Manley's legal residence, the IHO needed to examine *Manley's intent* to reside on the HPL homesite and *manifestations of his intent* in accordance with the proper standard. But instead, the IHO found one fact dispositive of Manley's legal residence: his grandparents' relocation from the HPL homesite. This reasoning fails to comport with the residency standard. Indeed, it is unclear how Manley's grandparents' relocation demonstrates Manley's intent to reside at the HPL homesite or is otherwise a manifestation of his intent. And there is no authority to suggest that this fact automatically establishes that Manley is not a legal resident. Affording dispositive weight to the grandparents' relocation in denying Manley's claim of residence is inconsistent with the certifications of relocation benefits for his mother and other relatives. Instead of relying on a single fact, the residency standard allows the IHO to consider all relevant data in the record. *See* 49 Fed. Reg. 22,277–78. And here, the record contains credible testimony from Manley and his family members related to Manley's continued connection to the HPL homesite.

By casting aside the proper standard and relying solely on Manley's grandparents' relocation to determine Manley's legal residency, the IHO "entirely failed to consider an important aspect of the problem": evidence of Manley's

intent to reside at the HPL homesite and manifestations of his intent. *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43; *see also Innova Sols., Inc. v. Baran*, 983 F.3d 428, 434–35 (9th Cir. 2020) (finding that the U.S. Citizenship and Immigration Services' "failure to consider evidence so central to the inquiry is yet another (and independent) reason why its decision was arbitrary and capricious"); *Montana Wilderness Ass'n v. McAllister*, 666 F.3d 549, 558 (9th Cir. 2011) (finding that the National Park Service's failure to explain how its travel plan maintained "wilderness character" under the correct standard rendered the plan arbitrary and capricious). Thus, we cannot conclude that the IHO "reasonably considered the relevant issues and reasonably explained [his] decision" to find Manley ineligible for benefits, and we find that the IHO's decision was arbitrary and capricious. *Prometheus Radio Project*, 592 U.S. at 423. We reverse and remand for further proceedings consistent with this opinion.[1]

**REVERSED AND REMANDED.**

---

[1] Because we conclude that the IHO's decision was arbitrary and capricious based on its failure to properly consider whether the "temporarily away" exception applies, we decline to reach whether the decision was arbitrary and capricious based on its failure to apply the "customary use policy" or whether the decision was supported by substantial evidence. And because we make no ruling on the merits of Manley's application, we cannot determine whether the IHO violated its federal trust responsibility by finding Manley was ineligible for benefits.